LAW v. LIPSCOMB.

1. Where a married woman in person secured a loan of money, which was placed in her own hands, and for which she executed her note and mortgage, afterwards turning this money over to her husband as her agent, who in turn secured her therefor by a mortgage of his property, her note and mortgage constituted a binding contract as to her separate estate.
2. Petition for rehearing refused.

Before HUDSON, J., Spartanburg, March, 1889.

The opinion states the case.

*Mr. Stanyarne Wilson*, for appellant.

*Mr. H. E. Ravenel*, contra.

November 11, 1889. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On February 20, 1885, the defendant, who is a married woman, the wife of J. J. Lipscomb, executed to the plaintiff, for borrowed money, a note, of which the following is a copy: "Spartanburg, S. C., February 20, 1885. On or before the 20th day of February, 1885, I promise to pay to Mrs. Annie E. Law, or order, the sum of $501.50 ($1.50 being the cost of recording), with interest from date at the rate of

---

[1] No such point was made in any of the exceptions.—REPORTER.

10 per cent. per annum, &c. (Signed) E. M. Lipscomb." On the same day, to secure the note, she executed a mortgage to plaintiff on a tract of land belonging to her, and containing 120 acres. A small payment of $55.90 was made on the note March 12th, 1886, and the remainder of the note being still unpaid, the plaintiff brought this action to foreclose the mortgage. The defendant answered that the note and mortgage were executed by her for money loaned to her husband, J. J. Lipscomb; that as his wife, she was induced to execute the said instruments by the importunities of her husband; that none of the money was received by her or for her, or was ever used for the benefit of her separate estate; and therefore she insisted that, as to her, a married woman, the aforesaid note and mortgage were void and of no effect.

The cause was referred to a referee, J. K. Jennings, Esq., who took the testimony, which is all printed in the Brief. Among other things, it appeared that the transaction, as to the loaning of the money, was conducted by C. P. Sanders, Esq., as the agent of the plaintiff, with the defendant in person, and that there was on record a mortgage of a tract of land, given by J. J. Lipscomb to the defendant, his wife, "on February 25, 1885, to secure a note for $500," &c. The referee found as matter of fact, "That the defendant intended, when the loan was made, to create a debt against herself. The money was counted and placed in her hands by the agent of the plaintiff. She created an estate for herself in the five hundred dollars, over which she had absolute control. Immediately after the money was paid to the defendant, she turned it over to her husband, who took it and handed her $50 of the same. * * *

"On February 25, 1885, five days after plaintiff's note and mortgage were made, the defendant took a note from her husband for the sum of $500; and there was an energetic effort on the part of the defendant to show that this note was given to her for the rent of her place and for proceeds of her 'patch cotton.' It is strange that she happened to make a general settlement with her husband, for 'rent and patch cotton,' just at this time when this money had been borrowed, and at no other time. It is very strange, too, that the rent and patch cotton happened to amount

to exactly $500. But still more strange is the fact, that the defendant, more than two years after this, took a mortgage from her husband to secure this note for rent and patch cotton, and did not secure all the rent due her at that time. No rent has ever been paid to her up to this time by her husband, &c. This theory is utterly unreasonable, and fails to satisfy me that there is any truth in it. I find that this $500 note was given to defendant by her husband for the money borrowed from her, which she had borrowed from plaintiff. The fifty dollars given by the husband of defendant to her possibly represents one year's interest in advance at ten per cent. The note and mortgage held by defendant on her husband, therefore, is another separate estate, which she has been able to create in her own name by reason of the loan, which she secured at the hands of the plaintiff, &c.

"I find as conclusions of fact: I. That the note given by defendant to the plaintiff was a contract made by the defendant as to her separate property. II. That the amount due by the defendant to the plaintiff is the sum of $501.50, with interest at 10 per cent. per annum, &c. And I find as conclusion of law, that the plaintiff is entitled to the foreclosure of her mortgage, the sale of the premises, and to have the proceeds of such sale applied to the payment of her debt," &c., &c.

Upon exceptions to this report, the cause came on for trial by Judge Hudson, who, after full argument, decreed as follows: "The referee's report is hereby confirmed in its findings, both of law and of fact, and made the judgment of this court, except in so far as the same may be altered by this decree. I further hold, that J. J. Lipscomb was the general agent of the defendant, and as such had charge of her lands. In the transaction with Mrs. Law, J. J. Lipscomb was, throughout, the agent of the defendant, and his acts were her acts and his representations were her's also, at least so far as the plaintiff is concerned. Mrs. Lipscomb derived benefit from the money loaned, and she is bound, as well as her separate estate, by her contract," &c.

From this decree the defendant appeals to this court upon the following grounds:

"I. In sustaining the error of the referee, that the defendant created an estate for herself in the $500, and that she thereby

became liable and legally bound for the note and mortgage sued on.

"II. In sustaining the error of the referee, that the $500 note given to the defendant by her husband was for the money which she had borrowed from plaintiff, and not for the 'rent and patch cotton' money due the defendant by her husband, &c.

"III. In sustaining the error of the referee, that the note and mortgage held by the defendant on her husband is a separate estate, which was created by the loan of plaintiff to her, and that, therefore, she is legally bound to plaintiff.

"IV. In confirming as a fact the conjecture of the referee, that defendant had used $50 of the money borrowed from the plaintiff.

"V. In overruling the referee, and holding that defendant derived benefit all from the money loaned.

"VI. In holding that J. J. Lipscomb was the general agent of the defendant, and as such had charge of her lands, and that in the transaction with Mrs. Law he was, throughout, the agent of defendant—his acts were her acts, and his representations were her's, &c.

"VII. In sustaining the error of the referee, that the note given by the defendant to the plaintiff was a contract made by the defendant as to her separate estate, and that she and her estate are bound by it.

"VIII. In holding that there was anything due by defendant to plaintiff, and in decreeing that plaintiff is entitled to judgment of foreclosure, and in rendering such judgment.

"IX. In not holding that defendant was without power to execute the note and mortgage herein sued on, she being a married woman, and they not being given for the benefit of her separate estate.

"X. In not dismissing the complaint with costs, &c."

The referee found as matter of fact, "that the notes and mortgage given by the defendant to the plaintiff was a *contract* made by the defendant as to her separate property." In this finding the Circuit Judge concurred, adding that in the transaction with Mrs. Law, J. J. Lipscomb was, throughout, the agent of the defendant, and his acts were her acts, and his representations were her's also. In such case, the rule of this court is well known. We have read the testimony carefully, and we do not

think that the finding was against the weight of the evidence. On the contrary, it seems to us that all the circumstances of the case, notwithstanding the positive testimony of the defendant and her husband, are in entire accord with the finding. The defendant in person, and on the faith of her property, secured the loan. She executed the note and mortgage herself, and the money was placed in her hands; and she then turned it over to her husband, who, as stated by herself, was her agent. Besides, she endeavored to secure the repayment of the $500 to her by taking a mortgage from her husband of a tract of land which belonged to him.

This fact being thus considered as established under the well known rule of this court, we do not think it necessary to follow the learned argument of the appellant's attorney into the general subject of the rights and powers of married women, so recently considered by this court. The words of the statute (sections 2036 and 2037, General Statutes) are as follows: "A married woman shall have power to bequeath, devise, and convey her separate. property in the same manner and to the same extent as if she was unmarried. * * * And shall have the right to purchase any species of property in her own name, and to take proper legal conveyances therefor, and contract and be contracted with as to her separate property, in the same manner as if she were unmarried," &c.

As I understand it, our decisions hold, that while a mortgage is not an "alienation," in the sense of the constitution, so as to enable a married woman thereby (mortgage) to secure the debt of another, yet there is nothing in the nature of a mortgage which excludes it from the category of those contracts that a married woman may make in reference to her separate estate. To that extent her power is as ample as if she were unmarried. The question, therefore, is not whether the mortgage of the defendant was an "alienation" under the general power given by the constitution, but whether it was an exercise of the power given by the act "to contract as to her separate estate." As it was clearly expressed by Mr. Justice McIver in *Greig & Matthews* v. *Smith:* "While it has been fully and finally settled, that, since the act of 1882, a married woman has no power to bind either herself or her separate property in any form for the payment of the debt of

another, yet it is equally well settled that she has full power to make any contract with reference to her separate estate, and may, by mortgage or otherwise, subject such estate to liability for the enforcement of such contract," &c.

In *Greig & Matthews* v. *Smith* (29 S. C., 426, April term, 1888), it was held that the note and mortgage of a married woman, given for money borrowed, and turned over to her husband as "her true and lawful attorney," was valid and binding, and was enforced against her separate estate. It was said in the case, that "surely the faithlessness of her agent, in misapplying the money advanced, cannot affect the rights of the person advancing the money, without it is shown that he participated in such misapplication." In *Fant* v. *Brown* (29 S. C., 598, April term, 1888), this court held that the note and mortgage of a married woman, given to secure the purchase money of two mules bought by her, were legal, and as such were enforced against her separate estate. In *Dial* v. *Agnew* (29 S. C., 454, November term, 1887), this court held that the note and mortgage of a married woman, given to secure the purchase money of an engine bought by her, were legal and binding, the court holding that it was not error in the Circuit Judge to charge, that "as to her separate property, a married woman has all the rights to contract that a grown-up man of twenty-one years of age would have," &c.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON. Under the authority of the recent cases of *Schmidt* v. *Dean*, *ante*, 498, and *Howard* v. *Kitchens*, *ante*, 490, in both of which I dissented, I am constrained to concur in this opinion, now presenting the law in such cases as held by the majority of this court.

MR. JUSTICE MCIVER. I concur for the reasons stated in my opinion in the case of *Howard* v. *Kitchens*, *ante*, 490, herewith filed.

The appellant filed a petition for the rehearing of this case, alleging that a judgment for deficiency in the decree of foreclos-

ure had been affirmed by this court, and that while this point was not argued, it could properly be considered under the eighth exception.

December 4, 1889.   The following order was delivered

PER CURIAM.   We have carefully examined this petition, and finding that no material fact or principle of law has been overlooked, the petition is dismissed.